

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 0002 |
| vs. | ) | Judge Gottschall |
| | ) | |
| AQIL ALLAWI | ) | |

**FILED** APR 10 2008 JUDGE JOAN B. GOTTSCHALL United States District Court

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant AQIL ALLAWI, and his attorney, PAUL FLYNN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The information in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

3. Defendant has read the charge against him contained in the information, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the information. The information charges defendant with engaging in food stamp fraud

through the use of interstate wires, in violation of Title 18, United States Code, Sections 1343 and 2.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

In overview, beginning in or about October 2001 and continuing until in or about December 2002, defendant ALLAWI, along with Individual A and others knowingly devised, intended to devise and participated in a scheme to defraud and to obtain property and money from the Food Stamp Program of the United States Department of Agriculture by illegally trading Link card benefits for discounted amounts of cash at Maream Food Market ("Maream"), a neighborhood grocery store located at 4043 West Madison, in Chicago.

More specifically, in October 2001, Individual A requested defendant ALLAWI to assist him in opening and operating a grocery store to be located at 4043 West Madison, in Chicago. Individual A told defendant ALLAWI that Individual A could put the store in ALLAWI's name so ALLAWI could develop credit. Defendant ALLAWI agreed to assist Individual A. While defendant ALLAWI did participate in the operation of the grocery store, and received a salary from the store, Individual A was the principal in charge of the store and ultimately controlled the finances.

On or about October 2, 2001, Individual A directed defendant ALLAWI to sign a USDA Food Stamp Application for Store and a Retailer Training Acknowledgment on behalf of Maream's which stated, in part, that: (1) ALLAWI had attended retailer orientation held by FNS and that the Food Stamp Program rules and regulations had been thoroughly reviewed; (2) ALLAWI understood that exchanging cash for Link card benefits was illegal and could result in permanent disqualification from the Food Stamp Program as well as criminal prosecution; and (3) it was ALLAWI's responsibility to ensure that all full-time and part-time employees were properly instructed regarding the Food Stamp Program regulations.

In addition, on the application, Individual A through defendant ALLAWI represented and caused to be represented to the USDA, among other things, that: (1) Maream's was a privately-owned company, owned and managed by defendant ALLAWI; (2) defendant was owner/president of Maream's; (3) the estimated annual gross sales at Maream's were $350,000; and (4) estimated food stamp eligible sales were $250,000 per year.

As a result of these efforts, on March 21, 2002, Maream was authorized to participate in the Food Stamp Program and to redeem food stamp Link card benefits and received a USDA authorization number. Defendant and Individual A, through the operation of Maream, obtained the use of the Link machine that had been assigned to Maream.

For purposes of participating in the Food Stamp Program, defendant ALLAWI opened two business accounts for Maream at TCF Bank in approximately March 2002 and June 2002, and designated the accounts as the recipient accounts for wire deposits of proceeds of

3

food stamp redemptions processed through the Link machine assigned to Maream. Defendant ALLAWI was the only authorized signatory for the second TCF Bank account that was opened for Maream in June 2002, and in which food stamp benefits processed through the Link machine assigned to Maream during July 2002 through December 2002 were deposited.

In execution of the scheme, defendant ALLAWI knowingly allowed Individual A and others to use the Link card machine from Maream to redeem Link card benefits in exchange for discounted amounts of cash, knowing that such exchanges were prohibited under the Food Stamp Program.

In order to process the improper cash for benefit transactions, defendant ALLAWI knowingly permitted Individual A and others working at the store to "swipe" food stamp recipient customers' Link cards through the Link card machine, which caused Affiliated Computer Services, located in Austin, Texas, to authorize the fraudulent Link card redemptions. After the transactions were authorized and accepted, Affiliated Computer Services caused wire transfers in the amount of the authorized transactions to be made from Austin, Texas, into Maream's designated accounts at TCF Bank in Chicago.

In further execution of the scheme, defendant ALLAWI personally cashed checks drawn on the TCF account for Individual A, and signed blank checks that were cashed by Individual A, from Maream's bank accounts, for the purpose of funding the continued cash purchases of Link card benefits at a discounted rate.

On approximately December 3, 2002, defendant ALLAWI knowingly allowed Individual A or others working at Maream, to redeem benefits from a Food Stamp recipient's Link card, using Maream's Link machine, in the amount of $181.25 in exchange for the payment of discounted amounts of U.S. currency to the Link card recipient.

On approximately December 5, 2002, defendant ALLAWI knowingly caused to be transmitted, and aided and abetted the transmission, by means of wire communication in interstate commerce from Austin, Texas to Chicago, Illinois, namely, an electronic funds transfer in the amount of $7,063.16 to TCF Bank, Chicago, Illinois, for deposit into the Maream's bank account.

From approximately May 17, 2002, through approximately December 5, 2002, Maream redeemed a total of approximately $504,000 in Link card food stamp benefits, causing a loss to the USDA of at least $350,000.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

   a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in the amount determined by the Court.

c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.     **Offense Level Calculations.**

i.     The base offense level for the charge in the information is 7, pursuant to Guideline §2B1.1(a)(1).

    ii. The base offense level is increased by 12 levels pursuant to Guideline Section 2B1.1(b)(1)(G) because the loss amount, represented by actual loss amount generated by the fraud scheme during the period of defendant's participation is approximately $ 350,957 which is greater than $200,000 and not more than $400,000.

    iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    iv. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

    v.  In 2006, defendant was convicted of damage to property in Will County, and sentenced to 30 days supervision and a $1,000 fine, resulting in 1 criminal history point under Guideline § 4A1.1(c).

   c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal one and defendant's criminal history category is I.

   d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 16, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 21 to 27 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

   e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

   f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10. The government agrees to recommend that sentence of imprisonment be imposed at the low end of the applicable advisory guidelines range.

11. Regarding restitution, the parties acknowledge that the total amount of restitution owed to the United States Department of Agriculture is $350,957, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

12. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Presentence Investigation Report/Post-Sentence Supervision

13. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

14. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

15. For the purpose of monitoring defendant's compliance with his obligations to pay a fine or restitution during any term of supervised release to which defendant is

sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

16. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 02.

17. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

18. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

   b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

      i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

      ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

        iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

      vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

    c.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the legality of the sentence imposed. Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

### Other Terms

19.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine or restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

### Conclusion

20.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

21.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the

Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

22. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

23. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: April 9, 2008

_____  
PATRICK J. FITZGERALD  
United States Attorney

_____  
AQIL ALLAWI  
Defendant

_____  
CHARLES E. EX  
Assistant U.S. Attorney

_____  
PAUL FLYNN  
Attorney for Defendant

16